GEORGE GARNES

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER *and* B. F. GOODRICH COMPANY

(No. 12848)

Submitted September 3, 1969.    Decided October 7, 1969.

*Steptoe & Johnson, Robert W. Lawson, Jr., Carl F. Stucky, Jr.,* for appellant.

*Robert G. Perry, Leon Copeland,* for appellee.

BERRY, JUDGE:

This is an appeal by the employer, B. F. Goodrich Company, from an order of the Workmen's Compensation Appeal Board dated April 30, 1969 affirming an order of the Workmen's Compensation Commisisoner of October 31, 1968 increasing the award to the claimant George Garnes from 38% to 63% permanent partial disability. The claimant was injured on December 22, 1964 when a tire he was repairing in the employer's tire shop exploded striking him in the right eye, face and right leg or knee. As a result of the injury he lost the sight of his right eye and suffered small lacerations of the face. After claimant was examined by Dr. H. A. Swart and Dr. Russel Kessel the Commissioner, on January 2, 1966, awarded the claimant the statutory disability of 33⅓% for the loss of his right eye and an additional amount of about 5% permanent partial disability to his right knee, making a total of 38%.

The claimant was initially examined and treated by H. A. Swart at the time of the accident who continued to see him until June, 1965. Dr. Swart's report to the Commissioner referred to varicose veins in his right leg and stomach trouble, which, according to Dr. Swart's report, claimant was trying to relate to the injury.

The claimant was then referred to Dr. Russel Kessel. On October 6, 1965 Dr. Kessel reported that the claimant admitted he had an ulcer before the accident but stated he had undergone surgery for this trouble in July, 1965 after the accident. Dr. Kessel reported that the claimant had varicose veins in his left leg but he did not see how they could come from the accident and doubted if the varicose veins in the right leg were a result of the accident. Dr. Kessel recommended 5% permanent partial disability for injury to the right knee. It was after these examinations that the Commissioner fixed the 38% permanent partial disability for the claimant's injuries, at which time he had before him the evidence relating to the eye and knee trouble, as well as the varicose veins

and stomach trouble, all of which were considered or presumed considered by the Commissioner at that time.

The claimant originally filed a protest to the award of 38% permanent partial disability but later withdrew it and accepted the award.

The claimant filed a petition to reopen the claim with a report from Dr. Joseph Seltzer dated October 25, 1967 attached to it, and the claim was reopened by the Commissioner on November 20, 1967. Dr. Seltzer's report states that the claimant advised him the varicose veins came from the accident and concluded in his report that the varicose veins did result from the accident. However, Dr. Seltzer's statement appears to be based solely on the statement made to him by the claimant, and he recommended that the injured man be given 10% permanent partial disability for the varicose veins in his right leg and 5% for varicose veins in the left leg. It appears that the claimant stated that his right knee was no worse than it had been. Dr. Seltzer indicated in his report that it was unlikely that the recurring ulcer was caused by the accident.

After the claim was reopened the claimant was again referred to Dr. Kessel for an examination who reported on December 16, 1967 that the claimant's legs were becoming more normal and that the injured knee had also recovered to its original size. He also found that the right calf and thigh were improved in size by a fraction of an inch. Dr. Kessel's report at this time indicated that the claimant was really better instead of worse, and he had been adequately compensated.

The Commissioner on December 19, 1967 entered an order refusing to increase the disability and holding that claimant had been adequately compensated for the disability arising out of his injury received on December 22, 1964 to which order the claimant filed a protest after which reports of various doctors were filed.

The report of Dr. Seltzer referred to above was filed and made a part of the record as well as a report of Dr. C. W. Stallard dated February 1, 1969. Dr. Stallard, who, like Dr. Seltzer, had never seen the claimant until several years after the accident, suggested that the claimant be given 10% more for the injury to his knee. His report indicated that the claimant told him he had pain in his right knee and that it was unstable and "locked," but his examination indicated it functioned normally. However, his report shows that the man's right thigh was one-half to one inch smaller than the left.

Another report from Dr. Kessel dated July 2, 1968 was filed in which he states the claimant told him that at times his right knee felt like it would "buckle" but that it had never done so and that it ached at times. Dr. Kessel again stated the claimant was orthopedically in better condition than he was in 1965 at the time of his first visit. He further stated that the claimant told him he still had the same complaint he had suffered previously and the doctor then stated there was no appreciable change in the condition of the varicose veins and that 5% disability for the knee was sufficient.

Another report of Dr. Swart dated July 8, 1968 was filed in which he stated the claimant still suffered pain in the right leg and knee, but that the knee had no "catching" or "locking" and that it had never actually given away and he was of the opinion the 5% permanent partial disability for all of the injuries, besides the eye injury, had been adequate compensation to the claimant.

A report of Dr. Henry R. Glass dated October 6, 1967 was filed and only refers to the claimant's ulcer for which he performed an operation. He stated the injury was not a direct cause of the ulcer but might have been connected to it.

A report from Dr. Ralph Nestmann dated October 21, 1968 stated that there was no direct connection between

the eye trouble and the stomach trouble and in his opinion the stomach difficulty was not compensable.

It clearly appears that the complaints with regard to the varicose veins, the stomach trouble and the injury to the right knee were fully considered by the Commissioner at the time of the original award of 38% permanent partial disability, and therefore the claim should not have been reopened by the Commissioner; and the first order of the Commissioner after the reopening to the effect that claimant had been fully compensated was proper under the facts in this case and law applicable thereto. *Blevins* v. *State Compensation Commissioner*, 127 W. Va. 481, 33 S. E.2d 408; *Taylor* v. *Workmen's Compensation Commissioner*, 151 W. Va. 409, 151 S. E. 2d 283; *Bragg* v. *State Workmen's Compensation Commissioner*, 152 W. Va. 706, 166 S. E.2d 162.

The varicose veins referred to in the doctors' reports before the original award was made were considered by the Commissioner before his first rating and in addition there is no indication that there was any progression or aggravation in connection therewith, and there were no new facts presented in the petition to reopen. Likewise, the injury to the knee had been considered in connection with the original award and there is no evidence of any progression or aggravation in connection therewith.

The legal aspect of these matters is clearly set out in the two syllabus points in the case of *Taylor* v. *Workmen's Compensation Commissioner, supra,* wherein the following language appears:

> "1. Where the compensation commissioner makes an award of compensation based upon a finding of permanent partial disability, which award becomes final by failure to protest against or appeal therefrom, the case cannot be reopened, or any additional compensation awarded unless there is a showing of a progression or aggravation in the claimant's condition, or some fact or facts not theretofore considered by the commissioner in his former findings and which would entitle

the claimant to a greater benefit than that previously granted.

"2. Facts appearing in the record at the time of an award of compensation for permanent partial disability will be treated as having been considered by the commissioner in making such award."

It therefore appears that the order of the Appeal Board affirming the Commissioner's order is clearly wrong and that the order of the Workmen's Compensation Appeal Board should be reversed and remanded for the entry of a proper order. *McGeary v. State Compensation Commissioner*, 148 W. Va. 436, 135 S. E.2d 345.

In accordance therewith, the order of the Workmen's Compensation Appeal Board is reversed and this case is remanded to the Appeal Board and to the Commissioner for the entry of a proper order consistent with the reasons contained herein.

*Reversed and remanded.*